```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                      HOT SPRINGS DIVISION
```

**MITZIE STEVENS,** *AS SPECIAL*
*ADMINISTRATOR OF THE ESTATE*
*OF HARVEY FRAZIER, DECEASED*,
**AND CHARLES KUNTZ,** *AS SPECIAL*
*ADMINISTRATOR OF THE ESTATE OF*
*FLORA KATHLEEN KUNTZ, DECEASED*                    **PLAINTIFFS**

       **v.**                    **Civil No. 09-6008**

**DIVERSICARE LEASING CORP.,**
**DIVERSICARE MANAGEMENT**
**SERVICES COMPANY,**
**ADVOCATE, INC., AND**
**STEVEN LEVATO**                                    **DEFENDANTS**

## O R D E R

NOW on this 4th day of May, 2009 comes on for consideration the following motions and respective responses thereto:

* Defendant Steven Levato's **Motion to Dismiss** (document #3);

* Defendant Advocat, Inc., Diversicare Leasing Corpation, and Diversicare Management Services Company's **Motion for Summary Judgment and to Dismiss Plaintiff's Class Action Complaint** (document #7);

* Plaintiffs' **Motion to Remand** (document #14).

The Court, having reviewed the pleadings of the parties, and all other matters of relevance before it, and being well and sufficiently advised, finds and orders as follows:

1. On January 2, 2009, Plaintiffs Mitzie Stevens, as Special Administrator of the Estate of Harvey Frazier, deceased, and Charles Kuntz, as Special Administrator of the Estate of Flora Kathleen Kuntz, deceased, ("Plaintiffs") commenced this class action lawsuit in the Circuit Court of Garland County, Arkansas against Defendants Diversicare Leasing Corporation, Diversicare Management Services Company, Advocate, Inc., and Steven Levato, Administrator of the Garland Nursing & Rehabilitation Center ("Defendants").

In their complaint, Plaintiffs allege that Defendants breached their statutory and contractual obligations to all residents of the Garland Nursing & Rehabilitation Center ("the Center") by, among other things, failing to properly staff the Center and failing to provide a clean and safe living environment. Plaintiffs also claim that such failure to properly staff and operate the Center constitutes a breach of Defendants' fiduciary duty and duty of care owed to all residents.

Plaintiffs request that a class be certified consisting of all residents and estates of residents who resided in the Center at anytime during the five year period prior to the filing of the complaint, through the date of trial. Moreover, Plaintiffs seek compensatory and punitive damages, attorneys' fees, interest, and costs in an unspecified amount.

2. On January 26, 2009, Defendants removed the instant matter to this Court pursuant to 28 U.S.C. § 1332 -- asserting that the

parties are diverse and the amount in controversy exceeds the federal jurisdiction minimum. Defendants also base the removal of this action on the Class Action Fairness Act ("the CAFA"), 28 U.S.C. § 1332(d)(2).

    3. The Court will first address Plaintiffs' pending **Motion to Remand** (document #14). In their motion, Plaintiffs argue that federal diversity jurisdiction is not proper, because the parties are not completely diverse. Specifically, Plaintiffs say that as residents of the Center, which is located in Arkansas, all Plaintiffs are Arkansas residents, and Defendants Steve Levato ("Levato"), Administrator of the Center, and Diversicare Leasing Corporation ("DLC") are also Arkansas residents.

    Plaintiffs also say that Defendants have failed to establish that the CAFA's amount in controversy requirement is satisfied here. Additionally, Plaintiffs contend that jurisdiction is not proper under the CAFA because the Act's local controversy and home state exceptions apply.

    In response, Defendants argue that complete diversity exists because Levato was fraudulently joined to defeat federal diversity jurisdiction. Defendants say that no cause of action lies against Levato and the claims against him should be dismissed accordingly. Defendants also deny that DLC is an Arkansas resident. Moreover, Defendants say that the jurisdictional requirements of the CAFA have been satisfied here.

4.  The party seeking to invoke the jurisdiction of the federal courts has the burden of proving the existence of such jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 56 S.Ct. 780, 785 (1936).  Thus, in removal cases the burden is on the defendant to establish subject matter jurisdiction, and all doubts are to be resolved in favor of remand. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993).

In class action lawsuits, the CAFA gives federal courts original jurisdiction where minimal diversity exists (at least one plaintiff and one defendant are from different states) and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). The aggregate number of proposed class members must be 100 or more. Id. at § 1332(d)(5)(B).  Demonstration of these requirements establishes a prima facie case for federal jurisdiction and satisfies the removing party's burden.

Once those requirements have been satisfied, the party seeking remand has the burden of establishing the prerequisites for the exceptions to jurisdiction contained in 28 U.S.C. § 1332(d)(3) and (d)(4). See Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 485 F.3d 793, 797 (5th Cir. 2007); Hart v. FedEx Ground Package System Inc., 457 F.3d 675, 680 (7th Cir. 2006); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007).

5.  In the instant matter, it is undisputed that minimal diversity exists.  As to the number of proposed class members, the

class, as described by Plaintiffs, consists of all residents and estates of residents who lived in the Center at anytime within the past five years, from the date the complaint was filed herein, through the time of trial. Doc. 2 at 1. Plaintiffs further state that they seek both compensatory and punitive damages in excess of the federal jurisdictional minimum ($75,000) for <u>each</u> of the putative class members. Thus, a determination of likely class size will bear directly upon the amount in controversy.

To that end, Defendants have offered minimum staffing report forms for the relevant time period as evidence that the proposed class exceeds 100 people. <u>See</u> Doc. 1-6. These forms show the number of residents who occupied a bed at the Center on particular days. Plaintiffs argue that these forms are not helpful in determining the proposed class size because resident names are not listed and nursing home residents can stay for weeks, months, or years. However, taking even the lower average of daily occupants at the Center, over a more than five year period, it appears that the class size is well above 100. Plaintiffs say as much in their complaint, which states that "[a] class action is clearly a more efficient way of handling a case when there is a predominating common issue to be resolved for *hundreds of class members*." Doc. 2 at 16 (emphasis added).

Moreover, Defendants have offered the affidavit of Levato, wherein he states that, "the total number of all persons, living or

-5-

dead, who have resided in the Garland facility from January 2004 until the present date exceeds 100 persons in number." Doc. 21-5. As administrator of the Center, Levato is the very person who should have such knowledge and information. And, if the proposed class size exceeds 100 persons (which the Court believes it does), the amount in controversy certainly exceeds $5,000,000 -- as Plaintiffs seeks compensatory and punitive damages in excess of $75,000 for each putative class member.

Considering the foregoing, the Court believes that Defendants have satisfied their burden of showing that the CAFA's class size and amount in controversy requirements are satisfied here. Plaintiffs have offered no evidence to refute this conclusion.

6. The Court will now consider whether this case falls within the CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A). This jurisdictional exception provides that a district court shall decline to exercise jurisdiction over a class action in which:

> (1) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (2) at least 1 defendant is a defendant -- (a) from whom significant relief is sought by members of the plaintiff class; (b) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (c) who is a citizen of the State in which the action was originally filed; and
>
> (3) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

>  (4) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

The parties do not dispute that the first, third, and fourth elements set forth above are satisfied here.  It is the second element which is contested.  Plaintiffs say that both Levato and the Center are residents of Arkansas and that their conduct forms a significant basis for the claims asserted against Defendants.  In response, Defendants argue that: (1) Levato was fraudulently joined to defeat federal jurisdiction and there are no tenable claims against him and (2) the Center is not an Arkansas resident, as its principal place of business is Tennessee.

As to whether Levato satisfies the criteria set forth above, the Court first observes that it does not agree with Defendants' assertion that this individual defendant was fraudulently joined. Joinder is fraudulent and removal is proper when "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002).  That is, the Court must determine whether there is arguably a reasonable basis for predicting that applicable state law might impose liability based upon the facts involved. Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007).

The Court agrees with Defendants in that Plaintiffs' statutory claim under Arkansas Code § 20-10-1201 *et seq.*, Protection of Long-Term Care Facility Residents (the "Residents' Rights Act"), can only be maintained against the Center's licensee - - that being, DLC. <u>See Health Facilities Management Corp. v. Hughes</u>, 227 S.W.3d 910 (Ark. 2006) (holding that non-licensee defendant was not subject to suit for violations under the Residents' Rights Act).

Nevertheless, the Court believes there is arguably a reasonable basis for predicting that state law <u>might</u> impose liability on Levato through theories of breach of the general duty of care, breach of fiduciary duty, and/or breach of contract. The conflicting case law cited by the opposing parties in their briefs leads the Court to conclude that Arkansas law is not clear regarding the extent and manner by which an administrator, such as Levato, may be held liable for harms alleged by long-term care facility residents.

However, in view of Levato's administrative duties of hiring and maintaining adequate staffing and overseeing the operation of the Center, the Court is of the opinion that Levato's actions or lack thereof are at the heart of this case. This conclusion is supported by the fact that the damages alleged herein resulted from the under-staffing of the Center and other such administrative failures that go directly to Levato's duties. Moreover, Plaintiffs say that Defendants were engaged in a joint enterprise of mismanagement which led to the claimed abuses and resident neglect.

While the relationship of the various Defendants and their respective relationships with Plaintiffs is not yet clear, the Court believes there is a reasonable basis for predicting that Levato might be held liable for the harms alleged.  Thus, in view of the foregoing, the Court finds that Levato was not fraudulently joined as Defendants maintain.

Moreover, the Court finds that Levato is a resident of Arkansas whose conduct forms a significant basis for the claims asserted by the proposed plaintiff class.  As previously stated, Levato was charged with ensuring that the Center maintained adequate staffing and resident care.  It is significant, then, that the harms alleged in the complaint stem, in large part, from the Center's inadequate staffing.  Thus, it appears that Levato's conduct and performance as administrator forms a significant basis for the claims asserted.

As to whether significant relief is sought by members of the proposed class against Levato, the Court notes that Levato was (and continues to be) the Center's administrator during the majority of the relevant time-frame for this lawsuit.  That is, Levato began his job as the Center's administrator in August 2005.  The proposed class consists of all residents from January 2004 through the time of trial.  Thus, it appears that a large majority of the proposed class members were harmed or otherwise impacted by Levato's actions as administrator.  Further, it is clear from the complaint that Levato is a primary focus of Plaintiffs' claims, not merely a peripheral defendant.  The Court, therefore, believes that

significant relief is sought against Levato by the plaintiff class viewed as a whole.

In view of the foregoing, the Court finds that the CAFA's local controversy exception applies in this case to defeat federal jurisdiction. This conclusion is supported by the CAFA's legislative history. Specifically, in discussing the local controversy exception, Senate Report 109-14 states:

> This provision is intended to respond to concerns that class actions with truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes. At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, [...] in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy - a controversy that uniquely affects a particular locality to the exclusion of all others.

Sen. R. 109-14, 38 (Feb. 28, 2005). The Senate Report goes on to provide the following example of how the local controversy exception was intended to work:

> A class action is brought in Florida state court against a Florida funeral home regarding alleged wrongdoing in burial practices. Nearly all the plaintiffs live in Florida (about 90 percent). The suit is brought against the cemetery, a Florida corporation, and an out-of-state parent company that was involved in supervising the cemetery. No other class action suits have been filed against the cemetery. This is precisely the type of case for which the Local Controversy Exception was developed. Although there is one out-of-state defendant (the parent company), the controversy is at its core a local one, and the Florida state court where it was brought has a strong interest in resolving the dispute. Thus, this case would remain in state court.

Id. at 41.

Clearly the facts of the case at bar align with this illustration.  Here all of the proposed plaintiff class members are Arkansas residents.  While the corporate defendants are out-of-state, Levato, a central defendant, is an Arkansas resident.  The controversy centers on a local nursing home and implicates questions of Arkansas law -- some of which, it appears from the parties' briefs, have not yet been resolved.  Thus, the Court is of the opinion that the Arkansas state court, where this action was brought, has a strong interest in resolving this dispute.  The Court, therefore, believes that this is the very sort of local matter anticipated by the CAFA's local controversy exception and the Court will grant Plaintiffs' motion to remand accordingly.

**IT IS THEREFORE ORDERED** that Plaintiffs' **Motion to Remand** (document #14) should be, and it hereby is, **GRANTED** and the Clerk of the Court is directed to remand this matter to the Circuit Court of Garland County, Arkansas, Civil Division.  The parties shall bear their own costs and expenses incurred as a result of Defendants' removal of this matter.

Having granted Plaintiffs' Motion to Remand, the Court will not address the other pending motions in this case.

**IT IS SO ORDERED.**

                                    **/s/ Jimm Larry Hendren**
                                    **JIMM LARRY HENDREN**
                                    **UNITED STATES DISTRICT JUDGE**